UNITED STATE BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: <br> Doctors Hospital of Hyde Park, Inc., <br>                            Debtor | |
| Gus Paloian, Chapter 11 Trustee of <br> Doctors Hospital of Hyde Park, Inc., <br>                       Counter-Claimant <br>                v. <br> LaSalle Bank National Association, <br> f/k/a LaSalle National Bank, as Trustee for Certificate Holders of Asset Securitization Corporation Commercial Pass-Through Certificates, Series 1997, D5, by and through its servicer, ORIX Capital Markets, LLC, <br>                       Defendant | Bankruptcy No. 00-bk-11520 <br> Chapter 11 <br> Adversary No. 11-ap-1983 |

### OPINION ON TRUSTEE'S MOTION (DKT 159) FOR SUMMARY JUDGMENT ON COUNT XV

In the related Chapter 11 Bankruptcy case filed by debtor Doctors Hospital of Hyde Park ("Debtor"), a claim was filed against the Debtor by LaSalle Bank National Association, f/k/a LaSalle National Bank as Trustee for certain asset certificate holders of Asset Securitization Corporation Commercial Mortgage Pass–Through Certificates, Series 1997, D5 ("LaSalle") for $60,139,317.04 ("Claim"). In the related bankruptcy proceeding, Trustee was ordered to file his objections to the claim as counterclaims asserted in this adversary proceeding. (Dkt. 1.) Separately, summary judgment was entered on Count I (Dkt. 122., 494 B.R. 344.) and Counts II, III, IV, VIII, X, XI, XII, and XIII. (Dkt. 48., 474 B.R. 576; reconsideration denied at 504 B.R. 900.)

Counterclaimant, Gus A. Paloian as Trustee for the bankruptcy estate of Doctors Hospital of Hyde Park, Inc. ("Trustee") has moved under Rule 7056, Fed. R. Bankr.P., for summary judgment on Count XV of the Counterclaim. He seeks here to disallow the $13,111,986 claimed as part of LaSalle's Claim labeled as the Yield Maintenance Premium ("Premium") as unmatured interest under 11 U.S.C. § 502(b)(2), or as an unenforceable

penalty barred under New York state law. In Count XV, Trustee Paloian pleaded that he seeks a judgment declaring that,

> The component of LaSalle's claim labeled a "Yield Maintenance Premium" is (i) a disguised penalty, (ii) a per-se penalty, (iii) not reasonably related to the damages LaSalle might have incurred as a result of a default under the Nomura Loan, (iv) duplicates LaSalle's actual damages; (v) constitutes a charge for post-petition interest prohibited by 11 U.S.C. § 502(b)(2); and (vi) is an estimate, theoretical in nature, does not reflect with any certainty the amount of any YMP that may be owing, and is thus barred under 11 U.S.C. § 502(b)(1).

As shown below, the Premium is not an unenforceable penalty under New York state law, but is unmatured interest for purposes of § 502(b)(2). Nevertheless, Trustee is not entitled to summary judgment because there remains an issue of material fact as to whether or not LaSalle was undersecured when the bankruptcy was filed. If LaSalle was then undersecured, the Premium is barred by § 502(b)(2); if not, it may be recovered.

## UNDISPUTED FACTS

In August of, 1997, HPCH, LLC, an affiliate of the Debtor ("HPCH"), borrowed approximately $50 million from Nomura Asset Capital Corp. ("Nomura" and "the Nomura Loan"). The terms of the loan was governed by a loan agreement and evidenced by a promissory note. The loan was secured primarily by a mortgage on the hospital real estate. As further security, Debtor also executed a Guaranty in favor of Nomura. Nomura transferred all of its rights and obligations relating to the Loan Agreement and Guaranty to Asset Securitization Corporation ("ASC"), which in turn transferred those rights and obligations to LaSalle.

Under the guaranty, Debtor agreed to satisfy those obligations which HPCH owed under to the express terms of the Loan Agreement. The guaranty specifically provided:

> Guarantor hereby unconditionally, absolutely and irrevocably guarantees and becomes surety to Lender for the prompt payment of the entire amount of the Indebtedness in strict accordance with the terms of the Loan Agreement. . . . Guarantor agrees that it will upon notice from Lender that any Event of Default has occurred under the Note or under any Loan Document, pay directly to Lender all of the then outstanding Indebtedness. Guarantor further agrees that any payment required hereunder will be made to Lender regardless of whether such sums have become due by reason of the maturity of the Note, acceleration of the Indebtedness or otherwise. . . .

Indebtedness was defined in the loan agreement as:

2

> The Principal Indebtedness, together with all accrued and unpaid interest thereon and all other obligations and liabilities due or to become due to Lender pursuant hereto, under the Note or in accordance with any of the other Loan Documents, and all other amounts, sums and expenses paid by or payable to Lender hereunder or pursuant to the Note or any of the other Loan Documents.

Thus, Debtor's responsibility as guarantor was the same as the obligations otherwise owed by HPCH. One such obligation was the Yield Maintenance Premium, which was triggered, "in the event that all or any portion of the Note is accelerated."

The Yield Maintenance Premium is another defined term:

> "Yield Maintenance Premium" means, in the event that all or any portion of the Note is accelerated, the amount that, when added to the amount otherwise due as a result of such acceleration, would be sufficient to purchase U.S. Obligations (A) having maturity dates on or prior to, but as close as possible to, successive scheduled Payment Dates (after the date of such acceleration of the Note) upon which Payment Dates interest and principal payments would be required under the Note as though the Maturity Date of the Note was the Optional Prepayment Date and (B) in amounts sufficient to pay all scheduled principal and interest payments on the Note as if the Maturity Date of the Note was the Optional Prepayment Date (but without any adjustment of the monthly amortization schedule); provided, however, that under no circumstances shall the Yield Maintenance Premium be less than zero.

(Loan Agreement at 35.) Interest is not a defined term in the Loan Agreement.

The Loan Agreement provided that the law of New York State applies. (Loan Agreement § 8.3.)

Doctors Hospital filed its Chapter 11 bankruptcy petition on April 17, 2000. LaSalle filed its Proof of Claim in the Doctors Hospital bankruptcy case on March 26, 2001. In the Statement of Claim filed as part of the Proof of Claim, LaSalle alleged that "[o]n or before the Petition Date, HPCH, LLC was in default of the Loan and Promissory Note and its financial obligations and covenants made therein, thus giving rise to the liabilities and financial obligations of the Debtor under its Guaranty as specified in this Proof of Claim."

LaSalle filed a foreclosure complaint against HPHC in state court in Cook County, *LaSalle Bank v. HPCH, LLC, et al.,* 00 CH 10251, on July 12, 2000, nearly three months after Doctors Hospital's bankruptcy filing. This date was the earliest possible date of acceleration under terms of the Loan Agreement. LaSalle admitted that in answers to interrogatories. LaSalle was asked,

> State whether all or any portion of the payment obligations under the Note were accelerated, and, if so, state:

3

> (a) The date of acceleration;
>
> (b) The event that triggered the acceleration;
>
> (c) The specific obligations accelerated;
>
> (d) Whether LaSalle or any persona acting on behalf of LaSalle gave notice of the acceleration to HPHC or Doctors Hospital.

LaSalle responded,

> Subject to the objections stated herein, Defendant has made available to Counter-Claim Plaintiff a copy of the Complaint in the Foreclosure Action. Under applicable law, the Complaint in the Foreclosure Action accelerated the payment obligations under the Note. Defendant has not presently located any other written notices of acceleration to HPCH. Investigation continues.

(Dkt. 161 Exh. F at No. 8.)

Other undisputed facts are referred to in the discussion that follows.

## DISCUSSION

### Jurisdiction

This Adversary proceeding arises out of and relates to the Chapter 11 case of Doctors Hospital, No. 00 B 11520. Venue is proper in this District pursuant to 28 U.S.C. § 1409. Jurisdiction lies under 28 U.S.C. §§ 157(b)(2)(C) and (K) 4 and 1334 and District Court Internal Operating Procedure 15(a). The Counts implicated by the pending Motion comprise Counterclaims to the LaSalle Claim against the Bankruptcy Estate seeking determination of the extent and validity of liens supporting that Claim. Statutory "core" authority lies under 28 U.S.C. § 157(b)(2)(C) and (K) to finally adjudicate those Counts.

The authority of a bankruptcy judge to rule on objections to a creditor's proof of claim where necessary to determine the valid amount of the claim was clearly recognized by the Supreme Court opinion in *Stern v. Marshall*, 131 S.Ct. 2594, 2616 (2011). This adversary proceeding was filed to state all objections to LaSalle's claim as counterclaims as required by F.R. Bankr. P. 3007(b) and 7001(2). The pending Motion for summary judgment concerns only Count XV of the Counterclaim, which disputes the extent, if any, to which the "Yield Maintenance Premium" can be part of LaSalle's claim. This contested proceeding is therefore necessary to determine the valid amount of LaSalle's claim, and therefore a bankruptcy judge has constitutional authority to adjudicate Count XV.

### Summary Judgment Standard

Summary judgment should only be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any

4

material fact and that the movant is entitled to judgment as a matter of law." F.R.C.P. 56(a) (made applicable in bankruptcy by Fed. R. Bankr.P. 7056). "The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact." *Roger v. Yellow Freight Sys.*, Inc., 21 F.3d 146, 148 (7th Cir.1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). If the initial burden is met, the non-moving party that bears the burden of proof on a dispositive issue at trial must affirmatively demonstrate a genuine issue for trial on that issue. *See Id.* Under F.R.C.P. Rule 56(a) and Rule 7056(a) Fed. R. Bankr.P., a party may move for summary judgment on separate issues thereby seeking to resolve those issues before trial. Partial summary judgment as to particular issues is permitted if the movant shows there is no genuine issue of material fact on that part or all of a claim or defense. F.R.C.P. 56(a). "If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact – including an item of damages or other relief – that is not genuinely in dispute and treating the fact as established in the case." F.R.C.P. 56(g).

### Yield Maintenance Premium is not Unenforceable as a Penalty

The first issue is whether the Yield Maintenance Premium is unenforceable as a penalty. Both Trustee and LaSalle agree that the Yield Maintenance Premium is a liquidated damages clause. While Trustee argues that the Yield Maintenance Premium is unenforceable as a penalty, LaSalle argues New York state law would recognize it as valid. The parties agree that under the Loan Agreement, New York law applies.

Liquidated damages clauses will generally be upheld where, at the time of contracting, it appears that actual damages will be difficult to estimate and the liquidated damages amount is not plainly disproportionate to the possible loss. *Walter E. Heller & Co. v. American Flyers Airline Corp.*, 459 F.2d 896, 899 (2d Cir.1972). Under New York state law,

> The party seeking to avoid the liquidated damages clause bears the burden of proving that it is a penalty, and must demonstrate either that the damages flowing from prepayment were readily ascertainable at the time the parties entered into the lending agreement or the prepayment premium is "conspicuously disproportionate" to the lender's foreseeable losses.

*JMD Holding Corp. v. Congress Fin. Corp.*, 4 N.Y.3d 373, 795 N.Y.S.2d 502, 828 N.E.2d 604, 609 (2005). Generally, New York state law follows the trend that "favors freedom of contract through the enforcement of stipulated damage provisions as long as they do not

5

clearly disregard the principle of compensation." *Id.* at 610 (citing 3 Farnsworth, Contracts § 12.18). When the liquidated damages amount is arrived at as "the product of an arms-length transaction between sophisticated businessmen, ably represented by counsel," that fact tends to support a finding that the liquidated damages were proportionate. *Id.* at 509-10 (citing *Walter E. Heller & Co., Inc. v. American Flyers Airline Corp.*, 459 F.2d 896, 899 (2d Cir. 1979).

Further, a Southern District of New York Bankruptcy Court opinion has ruled that a prepayment premium is enforceable under New York state law:

> Prepayment premiums are generally enforceable under the New York common law "rule of perfect tender in time." This rule prohibits the prepayment of the loan under the rationale that the lender has the absolute right to receive the bargained for income stream over the life of the loan. The prepayment premium is viewed as the price of the option exercisable by the borrower to prepay the loan and cut off the lender's income stream, and insures the lender against loss of the bargain if interest rates decline.
>
> Where ... a clear and unambiguous clause requires the payment of the prepayment premium even after default and acceleration, the clause will be analyzed as a liquidated damages clause.

*In re Madison 92nd St. Associates LLC*, 472 B.R. 189, 195-96 (Bankr. S.D.N.Y. 2012)

Trustee further argues that the Premium is unenforceable even if it is not a penalty because it fails to specify a sum certain. Trustee cites *CIT Group/Commercial Services, Inc. v. Holladay-Tyler Printing Corp*, 94-cv-6642, 1995 WL 702343, at *1 (S.D.N.Y. Nov. 29, 1995) for the proposition that, "liquidated damages clauses must specify an amount either in absolute dollars or in some manner that obviates foreseeable court involvement." However, his reliance on that case is misplaced, as that opinion upheld a liquidated damages clause which used a formula that was "based in part on the amount of sale proceeds obtained by CIT when it repossesses and sells the leased equipment." *Id.* at *2. This was so even though the court may conceivably have had to determine the amount of sale proceeds because the formula would generate an amount "that adheres closely to what actual damages would be while simultaneously forestalling any reasonable disagreement over the precise amount of that recovery figure." *Id.* Here, once the correct date of acceleration is determined, determining the proper Yield Maintenance Premium would only require a mechanical calculation based on known amounts due and published rates of interest.

Trustee argues that the amount of the Yield Maintenance Premium is uncertain because the calculation results in merely a "theoretical" or an "estimated" amount. Indeed, LaSalle listed $13.1 million in its proof of claim, and now argues that only $12.7 million is due. However, a sum is not uncertain just because it would require a few hours of work by an accountant to determine. Nor is the sum uncertain because LaSalle has since come to recognize the correct operative dates for the calculation. The Yield Maintenance Premium is calculated by subtracting the outstanding principal at the time of acceleration from the total securities cost. The total securities cost is how much money LaSalle would have had to pay out-of-pocket in order to purchase U.S. Treasuries necessary to generate the remaining one hundred forty-five monthly payments of principal and interest of $471,630.19 under the Loan Agreement the date of acceleration through the Optional Prepayment Date (as defined in the Loan Agreement). LaSalle attached this calculation, as computed by Loan Servicing Solutions, including a detailed cash-flow analysis of each U.S. Treasury obligation to be purchased and every monthly payment expected. (Dkt. 186 Exh. 8.)

Therefore, in conclusion, the Premium is not a penalty because New York state law explicitly recognizes that a prepayment provision in a loan agreement is not a penalty. That recognition is fully in accord with more general principles of New York state law that favor enforcing liquidated damages provisions that are reasonable, especially when both parties to a contract are sophisticated business-persons represented by counsel. Nor shall the Premium be viewed as failing to state a sum certain.

### The Yield Maintenance Premium is Unmatured Interest

The Yield Maintenance Premium here is unmatured interest because, in economic reality, it is a form of interest. The Yield Maintenance Premium here was unmatured at the time of the bankruptcy filing because the event that triggered the Yield Maintenance Premium, an acceleration of the loan, did not occur until after the bankruptcy filing. Bankruptcy Code § 502(b) provides:

> [I]f ... objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim ... as of the date of the filing of the petition, and shall allow such claim in such amount except to the extent that—
>
> (2) such claim is for unmatured interest.

As explained in a Seventh Circuit decision: "[T]he venerable principle that a bankruptcy court can refuse to award interest that accrues on a creditor's claim after the petition for bankruptcy is filed . . . is designed for cases where there is not enough money to

7

pay all the creditors-so that there is a question whether one creditor should get interest while another doesn't even recover principal." *In re Chicago, Milwaukee, St. Paul & Pac. R. Co.*, 791 F.2d 524, 529 (7th Cir. 1986). That is, payment of interest to an undersecured lender while unsecured lenders are not paid interest is precisely what § 502(b)(2) is meant to prevent.

The Loan Agreement does not provide a definition of the term "interest." However, courts look to the economic substance of the transaction to determine what counts as interest. This was made clear in the LTV bankruptcy case in the context of an original issue discount ("OID"). OID is the difference between the face value of a bond and the issue price, and compensates a creditor for a stated interest rate which is too low. *In re Chateauguay Corp.* 961 F.2d 378, 380 (2d Cir. 1992). In the *LTV* opinion, the Second Circuit ruled, "The word 'interest' in the statute [§ 502(b)] is clearly sufficient to encompass the OID variation in the method of proving for and collecting what in economic fact is interest to be paid to compensate for the delay an risk involved in the ultimate repayment of monies loaned." *Id.* at 381. (quoting *In re Public Service Co. of New Hampshire*, 114 B.R. 800, 803 (D.N.H. 1990).

The Yield Maintenance Premium, as defined, serves the purpose of interest in economic reality because it accelerates all of the interest on the loan yet to be accrued on the note so that it is immediately due and owing, while deducting what the lender would have been able to earn by investing in risk-free securities. It is a bargained for feature of the loan that compensates the lender for possible changes in the interest rate in the future, and is thus part of the price of the money loaned now in terms of money to be paid back in the future. Both OID and yield maintenance premiums are one-time charges to compensate the lender for lending: that is, the price of money received now in terms of money received later. If an original issue discount is interest, then so is a yield maintenance premium.

LaSalle argues that the Yield Maintenance Premium is not unmatured interest because it constitutes liquidated damages. This is a false dichotomy because the Yield Maintenance Premium may well be both. Nothing about the nature of liquidated damages necessarily excludes interest, or vice versa. Further, it is common for an award of damages to contain interest. For example, under New York state law, "Interest shall be recovered upon a sum awarded because of a breach of performance of a contract ..." N.Y. C.P.L.R. § 5001(a).

Nor are LaSalle's cases persuasive. *In re Trico Marine Servs., Inc.,* 450 B.R. 474, 480-81 (Bankr. D. Del. 2011) relies on the false dichotomy between unmatured interest and liquidated damages. The *In re Trico Marine* opinion also cites a number of cases for what it calls the majority view that a Yield Maintenance Premium is not unmatured interest. *Noonan v. Fremont Fin. (In re Lappin Elec. Co.),* 245 B.R. 326 (Bankr. E.D. Wisc. 2000) construed a prepayment clause for a revolving line of credit, and concluded that, "In this case, the charge is independent of the amount owed at termination, thus negating any characterization as interest." *Id.* at 330. Another opinion reasoned that, "Prepayment amounts, although often computed as being interest that would have been received through the life of a loan, do not constitute unmatured interest *because they fully mature pursuant to the provisions of the contract." In re Outdoor Sports Headquarters, Inc.,* 161 B.R. 414, 424 (Bankr. S.D. Ohio 1993) (emphasis supplied). Thus, the timing of when a prepayment clause takes effect matters. *Skyler Ridge* was also decided based on the timing of when the prepayment provision took effect. "However, the Court does not interpret [§ 502(b)(2)] to apply to a liquidated damages provision, even where the damages are for unearned interest. Liquidated damages, including prepayment premiums, fully mature at the time of breach, and do not represent unmatured interest." *In re Skyler Ridge,* 80 B.R. 500, 508 (Bankr. C.D. Cal. 1987)

The reasoning of *Skyler Ridge* is especially pertinent here. In *Skyler Ridge,* otherwise unearned interest became fully mature because of the breach, which accelerated the due dates to before the bankruptcy filing. Here, the undisputed facts show that the Yield Maintenance Premium was not due until the loan was accelerated when the foreclosure was filed – a date three months after the bankruptcy case was filed. The terms of the loan made the Yield Maintenance Premium due at acceleration, not upon default. Even though LaSalle had the right to declare an acceleration based on a default before the bankruptcy was filed, it did not do so. Unmatured interest is "interest which was not yet due and payable at the time the petition was filed." *In re X-Cel, Inc.,* 75 B.R. 781, 788-89 (N.D. Ill. 1987) At the time the Doctors Hospital bankruptcy case was filed, the Yield Maintenance Premium was not due, and thus the interest was still unmatured. Upon the filing of the foreclosure case, the Yield Maintenance Premium became due, and the Premium then represented the interest that became due and fully mature only at that time.

<u>LaSalle Alleges It is Oversecured</u>

In a footnote at the end of its brief, LaSalle states that it is oversecured as a result of a recent summary judgment on Count I of this adversary proceeding in this case, and thus entitled to the Yield Maintenance Premium as interest under § 506(b) of the Bankruptcy Code. In a footnote at the end of its reply brief, the Trustee asserts that the loan was undersecured. In this battle of the footnotes, neither party spelled out the basis for its position or otherwise supplied a factual basis on their respective contentions. Nor has either party addressed whether, if the Premium is characterized as interest, Trustee's obligation to pay LaSalle the Premium has already been satisfied by the earlier Nomura Settlement discussed in the summary judgment opinion on Count I. *See* the earlier Summary Judgment opinion on Count 1, 494 B.R. at 368. The judgment entered on Count I explicitly ruled that,

> Determination of the extent that this Summary Judgment will also have as a setoff to interest originally or still claimed, or to any claim that may be tantamount to interest, is reserved for ruling following trial to determine the balance due if any on that Proof of Claim that is to be set by separate order.

(Dkt.122 at 2.)

The Trustee's request for summary judgment in Count XV assumes that, the loan was undersecured when the bankruptcy case was filed. Section 506(b), which entitles an oversecured creditor to post-petition interest provides, "To the extent an allowed secured claim is secured by property the value of which ... is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim ...." Here, there are insufficient facts established in the record to determine whether the value of the collateral securing LaSalle's claim was greater or less than the amount of its claim.

LaSalle filed its proof of claim asserting that, as of the petition date, Debtor owed $60,139,317.04 including a Yield Maintenance Premium of $13,111,986.00. (Trustee's Appendix to Rule 7056-1 Statement, Exh. E.) In the opinion filed in connection with the earlier summary judgment on Count I, one relevant undisputed fact found:

> If, however, the Trust were to apply the settlement payment from Nomura under the Settlement Agreement to the Doctors Hospital Guaranty, LaSalle asserts that the Trust might still be owed as much as $30 million under the Doctors Hospital Guaranty. Neither Trustee's Rule 7056-1 Statement nor LaSalle's Rule 7056-2 statement alludes to facts that would be sufficient to determine the value of LaSalle's Collateral.

*In re Doctors Hosp. of Hyde Park, Inc., 494 B.R. 344, 357* (Bankr. N.D. Ill. 2013) (citing Defendant's Appx. 2, (Affidavit of R. Farrington, ¶ 12, 17).) Trustee has still offered no evidence of collateral value as part of his instant motion.

Instead, Trustee argues that LaSalle should be held to a statement it made in response to an earlier motion, on July 1, 2013. In that response, LaSalle stated that it would not be able to recover post-petition interest under some repurchase agreement "unless its claim was over-secured (which it is not)." (Dkt. 105, at p. 5 n.1.)

"Binding judicial admissions are any deliberate, clear and unequivocal statement, either written or oral, made in the course of judicial proceedings." *Medcom Holding Co. v. Baxter Travenol Labs., Inc.*, 106 F.3d 1388, 1404 (7th Cir. 1997) (quoting *In re Lefkas Gen. Partners*, 153 B.R. 804 (N.D. Ill. 1993), internal quotation omitted). Judicial admissions "have the effect of withdrawing a fact from contention." *Keller v. United States*, 58 F.3d 1194, 1199 n.8 (7th Cir. 1995). LaSalle's remark in a footnote that it is not over-secured was not clear and unequivocal, nor did it establish the underlying facts which would support a finding of the collateral being over-secured. Being over or under-secured is a conclusion that compares debt to value of collateral. Thus, the ultimate facts as to debt and value were not withdrawn from contention. Not even LaSalle's claim in the same response to the Motion to disallow – "LaSalle has and continues to assert that after application of the Nomura Settlement proceeds to the LaSalle Claim, a balance of nearly $30 million remains unpaid on the LaSalle Claim." (Dkt. 105 at 3.) – amounted to a judicial admission that LaSalle was undersecured because nothing in that remark shows what collateral value was available to satisfy the purported loan due.

## CONCLUSION

For the foregoing reasons, Trustee is not entitled to judgment on Count XV as a matter of law based on the undisputed material facts concerning LaSalle's Yield Maintenance Premium claim. The Yield Maintenance Premium represents unmatured interest at the time of the bankruptcy filing because it was not due and owing as of the time of bankruptcy filing. Nevertheless, it is not proper to enter summary judgment because there is a material dispute of material fact over whether or not LaSalle was undersecured when the bankruptcy case was filed. Therefore, Count XV will be set for trial. However, partial summary judgment will preserve the rulings herein, and the undisputed facts found in this Opinion will be deemed established for any trial on Count XV under Rule 56(g).

F.R.C.P. (Rule 7056 F.R. Bankr. P.) Trial dates will be scheduled at the status hearing set for April 24, 2014.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Dated this _____ day of April, 2014.